[Civ. No. 2860.   Third Appellate District.—April 23, 1925.]

## T. G. McCARTHY, Respondent, v. C. K. GRIDER et al., Appellants.

[1] TENDER—VENDOR AND VENDEE — RESCISSION — OFFER BY VENDEE IN WRITING TO PAY MONEY ENTITLING HIM TO DEED — INABILITY TO PERFORM—EFFECT OF — CONSTRUCTION OF CODE SECTIONS.—A vendee suing for rescission of a contract of sale of land, who offers in writing to pay to the vendors a sum of money which, under the terms of the contract, will entitle him to a deed to the land, is not entitled to invoke to his aid the provisions of sections 2074 and 2076 of the Code of Civil Procedure to the effect that

---

1.  See 24 Cal. Jur. 516.

"an offer in writing to pay a particular sum of money . . . is, if not accepted, equivalent to the actual production and tender of the money," and that "the person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it," where he has not in fact the ability to perform his offer to pay.

[2] Iᴅ.—Gᴏᴏᴅ Fᴀɪᴛʜ—Iɴᴀʙɪʟɪᴛʏ ᴛᴏ Pᴇʀғᴏʀᴍ—Eᴠɪᴅᴇɴᴄᴇ.—One of the essentials of a valid offer where it involves the performance of an act which calls for the payment of money as a condition precedent to the performance of a reciprocal and concurrent act by the party to whom the offer is made is that it "must be made in good faith," and where the offer of performance is made by a party who is at the time of the offer not able to perform it in that particular—that is, if at the time he is without the money necessary to make the offer good and knows it—such inability is indubitable evidence that the offer is not made in good faith.

[3] Iᴅ.—Sᴛᴀᴛᴜᴛᴏʀʏ Cᴏɴsᴛʀᴜᴄᴛɪᴏɴ. — While it is true that, by section 2074 of the Code of Civil Procedure and section 1496 of the Civil Code, where an offer to perform is made in writing but is not accepted, the actual production of the money is not necessary, nevertheless these sections do not dispense with the requirement of section 1493 of the Civil Code that an offer should be made in good faith, nor with the requirement of section 1495 of the latter code that the party making the offer must not only be willing but able to perform according to the terms of his offer.

[4] Iᴅ.—Iɴᴀʙɪʟɪᴛʏ ᴏғ Vᴇɴᴅᴇᴇ ᴛᴏ Pᴇʀғᴏʀᴍ Oғғᴇʀ—Eᴠɪᴅᴇɴᴄᴇ—Iɴᴠᴀ-ʟɪᴅɪᴛʏ ᴏғ Tᴇɴᴅᴇʀ.—In this action by a vendee for rescission of a contract of sale of land who offered in writing to pay to the vendors a sum of money which, under the terms of the contract, would entitle him to a deed, the evidence, without conflict, showed that plaintiff was not able, at the time his offer of performance was made, to satisfy or make good said offer to pay, and that the so-called offer or tender by the plaintiff was entirely invalid or without legal force or effect.

[5] Iᴅ. — Vᴇɴᴅᴇᴇ ᴏʀ Pᴜʀᴄʜᴀsᴇʀ Dᴇᴘᴇɴᴅɪɴɢ ᴜᴘᴏɴ Tʜɪʀᴅ Pᴀʀᴛʏ ᴛᴏ Fᴜʀɴɪsʜ Mᴏɴᴇʏ—Eғғᴇᴄᴛ ᴜᴘᴏɴ Qᴜᴇsᴛɪᴏɴ ᴏғ Aʙɪʟɪᴛʏ ᴛᴏ Pᴇʀғᴏʀᴍ. The principle that in actions by brokers to recover commissions for procuring a purchaser of property, it is requisite, to support such actions, that it be shown that such proposed purchaser is ready, able, and willing to make the purchase, and where it appears in any such action that the purported ability of the purchaser to make the purchase is wholly dependent upon the verbal promises of a third party, without consideration, to assist him in securing the money necessary to make the purchase, and the

broker is hence not entitled to recover, is applicable to any case where an offer to perform an act carries with it the necessity for the payment of money to make good the offer of performance as a condition to the performance of a concurrent condition by him to whom the offer is made.

[6] Id.—Objections to Offer.—The right to object to an offer to perform some act because of a fatal infirmity therein which does not come within those constituting valid grounds of objection thereto under section 2076 of the Code of Civil Procedure or other sections of our codes arises independently of statute, and is always available to him to whom the offer is made.

[7] Id.—Effect of Unpreparedness to Perform of Party to Whom is Made.—The fact that the party to whom the offer is made is also unprepared to perform does not furnish any justification for the inability of the party making the offer to perform, nor change what would otherwise be an ineffectual and shadowy form into a substantial, *bona fide*, and effective tender.

---

(1) 38 Cyc., p. 146, n. 99, p. 165, n. 78 New.   (2) 38 Cyc., p. 141, n. 64, p. 142, n. 74.   (3) 38 Cyc., p. 146, n. 1.   (4) 38 Cyc., p. 143, n. 78, p. 178, n. 7.   (5) 39 Cyc., p. 1564, n. 68.   (6) 38 Cyc., p. 165, n. 78 New.   (7) 38 Cyc., p. 143, n. 80 New.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Reversed.

The facts are stated in the opinion of the court.

Hawkins & Hawkins for Appellants.

R. B. Maxey for Respondent.

HART, J.—The defendants, prior to and at the time of the transaction upon which this action is founded, were the owners of lots 30 and 31, block No. 515, of the city of Modesto, in the county of Stanislaus. On the first day of September, 1920, the defendants and the plaintiff entered into and executed a written contract, whereby the former sold to the latter said lots for the sum of $4,800, of which the sum of $1,000 was to be and was paid upon the execution of said contract, and the balance to be paid in monthly installments of $30 or more until January 1, 1921, "at which time said monthly installments shall be increased · to thirty-five dollars or more for each month," deferred payments to bear interest at the rate of seven per cent per annum. The con-

tract provided that the vendee should be let into immediate possession of the premises; that time shall be of the essence of the contract; that if the vendee failed to pay any of the installments as stipulated within thirty days after the same became due the vendors shall be released from all obligation to convey said property, in which event the vendee shall forfeit all right to said property, and all payments theretofore made by him shall be deemed rental for the use of the premises while in the possession of the vendee. The contract proceeds:

"The vendors, upon receiving payments, at the times and in the manner hereinbefore specified, agree to execute and deliver to the said vendee, or to his assigns, a good, sufficient and marketable deed, free and clear of all liens and claims, and encumbrances, except permitted or suffered by said vendee.

"The said vendors further agree that upon payment of twenty-four hundred ($2400.00) dollars of said purchase price, in the manner hereinbefore specified, by said vendee, that they, the said vendors will convey the title to the said premises, as set forth in the paragraph immediately preceding, upon the execution by the said vendee and his wife, of a deed of trust on said premises to secure the unpaid purchase price. Said deed of trust shall be a first lien upon said premises, and shall be executed according to the same terms as are stated in this contract for payment of balance due, and interest to be paid semi-annually in addition to the monthly installments paid during the six months."

The total sum of $1,984 was paid by plaintiff to defendants under said contract and, upon grounds which will presently be stated, this action was brought by the former to obtain a decree rescinding, canceling, and setting aside said contract and a judgment for the moneys paid by the plaintiff to the defendants under and according to the stipulations thereof, with interest on the sum of $1,000—the initial payment under the contract—from the first day of September, 1920.

The plaintiff was awarded judgment as prayed for, and the defendants appeal.

It will be noticed that the contract provides in effect that the vendee may pay any sum on the lots in excess of the

specified monthly installments, from which it is manifest that he could have paid the entire indebtedness at any time had he desired to do so.

The amended complaint, after recapitulating the provisions of the contract to the effect that, upon the payment by the plaintiff of the sum of $2,400 on the purchase price of the lots, the defendants would execute to the former a ''good, sufficient and marketable deed, free and clear of all liens and claims, and encumbrances,'' etc., alleges that, on the twenty-eighth day of December, 1921, the plaintiff tendered to defendants the sum of $890, said sum being the amount necessary to make the payments total the sum of $2,400, thereby entitling the plaintiff, under the terms of the contract, to a deed from defendants conveying the property to him, and that, at the same time, the plaintiff deposited ''with the American National Bank of Modesto a deed of trust, duly executed and acknowledged by the plaintiff and his wife, on the premises,'' as required by the contract of sale. The complaint further alleges:

''That subsequently thereto and on or about the 6th day of January, 1922, defendants herein tendered to plaintiff a deed to said lands and premises hereinabove described; that said deed was a bargain and sale deed in the usual and customary form, and subject to the payment of taxes levied or assessed against said property.''

The complaint, proceeding, states that, upon the tender by defendants of a deed to said property, plaintiff caused the title to the lots to be investigated by an abstract company, with the result that it was disclosed that, on the thirteenth day of August, 1921, Clara E. Newport and others had brought an action in the superior court of Stanislaus County against one W. H. Hatton, the defendants and others to obtain a decree quieting title in favor of plaintiffs therein and against the defendants herein to certain lands, including the lots involved in this controversy, and that said action of Clara E. Newport et als. against defendants herein and others ''is still pending and undetermined and constitutes a lien or claim or encumbrance against said property''; that a *lis pendens* in said Newport action was filed for record and recorded on the thirteenth day of August, 1921. It is further alleged:

"That on or about the 7th day of January, 1922, plaintiff herein notified defendants of the claim, lien or encumbrance existing against said property, and demanded a title thereto in conformity with the terms of the agreement hereinbefore specified, but to perfect same defendants have, and do now still fail and refuse so to do.

"That on or about the 18th day of January, 1922, plaintiff herein surrendered the possession of the said lands and premises to defendants herein; rescinded the contract dated September 1st, 1920, and demanded from the defendants the return of the moneys heretofore paid to defendants under and by virtue of the terms of the said agreement."

The answer specifically denies the allegations of the complaint, except one or two, which, with certain qualifications in the nature of an avoidance of the effect thereof, it admits.

It appears that the case of *Newport* v. *Hatton et als.*, above referred to, was founded upon an alleged fraudulent transaction whereby the plaintiffs therein were wrongfully divested of their title to a certain body of land within which the lots in question are embraced. The demurrer to the complaint in said action was sustained without leave to amend, thereupon judgment was rendered and entered in favor of the defendants therein and from which the plaintiffs therein appealed to the supreme court. That court, in disposing of the appeal, affirmed the judgment as to all the respondents (defendants) other than W. H. and Ora D. Hatton, and as to the latter reversed the judgment. (*Newport et als.* v. *Hatton et als.*, 66 Cal. Dec. 351.) Within due time, however, a petition for a rehearing was filed and granted, and, upon a reconsideration of the appeal, the judgment was reversed as to all the respondents and the "cause remanded with directions to the trial court to overrule the demurrers of the various defendants." (*Newport et als.* v. *Hatton et als.*, 195 Cal. 132 [231 Pac. 987].)

On December 29, 1921, the plaintiff served the defendants with a written notice which, after referring to the provisions of the contract of sale to the effect that therein it was stipulated, among other things, that, upon the payment by plaintiff of the total sum of $2,400 of the purchase or contract price of the lots, the defendants would execute and deliver to plaintiff a good, sufficient, and marketable deed to said property, free and clear of all liens, claims, and

encumbrances, upon the execution by plaintiff and his wife of a deed of trust to and upon said premises, to secure the unpaid balance of the purchase price, contained the following: "You will therefore take notice that I have this day deposited with the American National Bank of Modesto the moneys to pay the balance due under the terms of said contract to you, together with a deed of trust, for the sum of $2400.00 due on or before three years, payable to your order, payable in monthly payments or installments of $35.00 or more, each month, with interest from date until paid at the rate of seven per cent per annum, said interest to be paid semi-annually."

The notice further stated that plaintiff had been and was then ready to pay any interest which might become due on the unpaid balance of the purchase price from September, 1921, to the date of the execution of the deed, and then demanded from defendants a deed conveying to plaintiff the property free from any and all liens, encumbrances, etc.

In reply to said notice the defendants, on January 6, 1922, served upon plaintiff a written notice, tendering a deed conveying said lots to plaintiff, conditioned for the payment by plaintiff to defendants of the sum of $890, as principal, and the sum of $77.63 for interest to the date of the execution of said notice, and the delivery to defendants by plaintiff of a deed of trust on said lots, together with a promissory note for the unpaid balance of the purchase price. Said notice stated that defendants "will immediately place said deed in escrow with the American National Bank of Modesto to be delivered to you (plaintiff) upon the conditions herein stated." Accordingly, on the sixth day of January, 1922, the defendants delivered to the bank above named a deed, conveying the lots to the plaintiff, to be held in escrow by said bank and delivered to plaintiff upon the latter's compliance with the conditions specified in the notice to plaintiff from defendants, and last hereinabove referred to. The said deed so delivered to the bank was accompanied by instructions to the bank in accord with the said notice from defendants to the plaintiff.

Thereafter, the plaintiff addressed and delivered to defendants a letter in which he stated that the latter had failed to comply with the provision of the contract of sale that they (defendants) would, upon the payment by plaintiff

of the total sum of $2,400, convey to the latter by deed the lots in question free and clear of all liens, claims, encumbrances, etc., and that, therefore, he refused "to accept the deed to this property at the present time," for the reason just stated, and calling the attention of the defendants to the report of the Stanislaus Land and Abstract Company upon the title to said lots. By said letter the defendants were further notified that they would be allowed five days in which to perfect the title to the property, and that "failing therein the agreement heretofore made and dated September, 1920, will be rescinded, and a demand made upon you (defendants) for the return of the moneys heretofore paid thereunder." This letter was accompanied by the report of said abstract company on the status of the title to the property. By said report it was shown that the action in which Clara E. Newport et. als. seek a judgment quieting their alleged title to the lots as against Hatton, the defendants herein and others had been brought and was then pending in the superior court of Stanislaus County and that a notice of *lis pendens* had been and was still recorded in the office of the county recorder of Stanislaus County.

On the eighteenth day of January, 1922, the plaintiff served a notice in writing on the defendants that he rescinded the contract of sale and that he surrendered possession of the premises to defendants. Accompanying said notice of rescission was a quitclaim deed to the premises, conveying same to defendants. Said notice stated that the ground of the rescission was that defendants had through their own fault caused the consideration for said contract of sale to fail, in that the "title thereto is not a merchantable title and for the further reason that the title . . . is not clear of all liens and claims and encumbrances," etc. Demand was also made in said notice for a return to plaintiff of all moneys paid by him to defendants on account of said contract of sale, the payments made being itemized therein.

The defendants, in answer to the said notice of rescission, on the nineteenth day of January, 1922, notified the plaintiff, by letter, that they refused to rescind said contract and to accept the quitclaim deed to said premises executed by plaintiff quitclaiming said property to defendants, and that they refused to pay to plaintiff the sum of $1,984, as demanded by plaintiff, and which constituted the sum paid by

the latter on the purchase price. At the same time the defendants returned to the plaintiff said quitclaim deed.

There are many points urged for a reversal of the judgment, but, as we view the case, the points made and the argument supporting them on the one hand and refuting them on the other cover a wider range than that within which we are justified in circumscribing the consideration of the appeal.

There is no claim, nor could such a claim be well founded, that there is not sufficient support for the finding and the conclusion of law that, by reason of the action of *Newport et als.* v. *Hatton et als.,* to quiet title to certain lands of which the lots in question were a part, which action was pending and undetermined at the time plaintiff offered to complete the payment of the sum of money entitling him to a deed to the property (and which was still pending at the time of the institution of this action), there then existed a claim against, and, consequently, a cloud upon the title to the lots, and that, therefore, defendants were without ability to convey a marketable or merchantable title to the lots. [1] But the defendants urge the contention, among others likewise pressed upon us, that the offer of plaintiff to them, dated December 28, 1921, to complete the payment of the sum of $2,400, which payment, either by the installments specified or otherwise, would, according to the terms of the contract of sale, entitle the latter to a deed from defendants conveying the lots to him, did not constitute a valid offer or tender, for the reason that, when the offer was made, the plaintiff was without ability to make it good. To this proposition the plaintiff counters with the contention that, inasmuch as defendants failed to object to the offer on that ground or for that reason, at the time the same was made, they waived said objection or the right to urge said objection, and are, as a consequence, estopped from now making such objection. This position of the plaintiff is founded on his construction or conception of the meaning and intent of sections 2074 and 2076 of the Code of Civil Procedure.

The first of the sections named reads: "An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender

of the money, instrument, or property.'' (See, also, sec. 1496, Civ. Code, to the same effect.)

The section secondly mentioned provides: ''The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards.''

It will be observed that both of the above sections are exclusive as to the matters as to which objections to an offer to perform an act are required to be made at the time such offer is made on penalty, if not made, of being bound to a presumptive waiver and its corollary, an estoppel. In other words, those sections are applicable only in those particular instances expressly specified therein, and have no reference or application to other essentials of a valid tender. At any rate, they have no application where the transaction as to which the offer is made requires the payment of money by the party making the offer and the latter is not able to comply with the offer in that particular. **[2]** One of the essentials of a valid offer where it involves the performance of an act which calls for the payment of money as a condition precedent to the performance of a reciprocal and concurrent act by the party to whom the offer is made is that it ''must be made in good faith'' (Civ. Code, sec. 1493), and where the offer of performance is made by a party who is at the time of the offer not able to perform it in that particular—that is, if at the time he is without the money necessary to make the offer good and knows it—such inability is indubitable evidence that the offer is not made in good faith. But our code goes further and declares that ''an offer of performance is of no effect if the person making it is not able and willing to perform according to the offer.'' (Civ. Code, sec. 1495.) By this provision the party making the offer must not only be willing but *able* to perform according to the terms of his offer. **[3]** It is true that, by section 2074 of the Code of Civil Procedure and section 1496 of the Civil Code, where an offer to perform is made in writing but is not accepted, the actual production of the money is not necessary, but these sections do not dispense with the re-

quirements of sections 1493 and 1495 of the Civil Code. (*Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001].) That case quotes approvingly the following from *Ladd* v. *Mason,* 10 Or. 314: "Surely the justice and good sense of the legislature should not be impugned by such a construction of this provision as would place its framers in the position of having intended to provide a mode whereby a party might make a valid tender if his offer should not be accepted, without the readiness or ability to make it good, in the event of its acceptance."

Again, in that case our supreme court likewise quotes the following excerpt from *Holliday* v. *Holliday,* 13 Or. 523 [11 Pac. 260, 12 Pac. 821]: "This statute dispenses with the necessity of actually producing the money with the offer, 'but this does not dispense with the necessity of the party having the money in fact.'" (See, also, *Allen* v. *Chatfield,* 172 Cal. 60, 68 [156 Pac. 47]; *Kuhns* v. *Chicago etc. Co.,* 65 Iowa, 528 [22 N. W. 661]; *Shugart* v. *Pattee,* 37 Iowa, 422; *McCourt* v. *Johns,* 33 Or. 561 [53 Pac. 601].)

[4] The evidence, without conflict, shows that plaintiff was not able, at the time his offer of performance was made, to satisfy or make good said offer in the particular mentioned. Indeed, the plaintiff himself does not claim that he had on deposit in the bank named in his written offer the money requisite to make good the offer of performance. In fact, he admitted that he then had no money in the bank at all and practically admitted that he had no money anywhere sufficient in amount to comply with the terms of his offer.

C. D. Swan, an officer of the American National Bank of Modesto, with which the deed of trust executed by plaintiff in favor of defendants was deposited, testified that plaintiff, about the time the latter served on defendants the writing containing the pretended tender, deposited with the bank, to be by it held in escrow, a promissory note in favor of defendants for the balance which would remain unpaid on the purchase price after the $2,400 had been paid, together with a trust deed to said lots for the benefit of the Griders or to secure said promissory note, but that he did not then deposit in the bank the money with which to make good his tender—that is, to make up the said $2,400; that plaintiff did not at that time have any money on deposit in the bank for

any purpose. The witness stated, however, that at or just prior to the depositing of said note and deed of trust with the bank, a party by the name of Way called at the bank with plaintiff and stated that if the bank would let plaintiff have a sufficient amount of money to complete the $2,400 payment, so that the latter would be in a position to make good his tender, he (Way) would indorse plaintiff's note to the bank for the money so loaned. To this proposition Swan, for the bank, assented, but, so the witness stated, the arrangement thus proposed was never carried out. No note was ever executed by plaintiff and Way in favor of the bank and no money was ever deposited in the bank by either for the purpose of satisfying the tender or for any purpose. Swan further testified that the bank would not have loaned the money to plaintiff on his unsecured note, nor would the bank have loaned plaintiff the amount required to complete the $2,400 payment on a second mortgage on the lots. In brief, neither at the time the tender was made nor at any time immediately succeeding that event did the plaintiff have available the necessary amount of money with which he could complete the $2,400 payment and so make good his offer, and at no time after the service of his written tender on defendants or before bringing this action did he show his ability to make such payment.

Way did not testify, but, so far as the record shows to the contrary, his proposal to indorse plaintiff's note at the bank for the amount required to complete the $2,400 payment was merely that of a volunteer. He was to be an accommodation indorser only. He was under no legal obligation to indorse or become a party to any note which plaintiff might have offered the bank to evidence a loan of money sufficient to make good his tender. [5] In actions by brokers to recover commissions for procuring a purchaser of property, it is requisite, to support such actions, that it be shown that such proposed purchaser is ready, able, and willing to make the purchase, and where it appears in any such action that the purported ability of the purchaser to make the purchase is wholly dependent upon the verbal promises of a third party, without consideration, to assist him in securing the money necessary to make the purchase, then the latter is not shown to be able to make such purchase, and

the broker is hence not entitled to recover. He has not shown that he produced a purchaser either able or ready to purchase. (*Merzoian* v. *Kludjian*, 183 Cal. 422 [191 Pac. 673], per Lawlor, J.; 4 Cal. Jur. 591; note, 1 A. L. R. 528.) The principle thus stated is, of course, applicable to any case where, as here, an offer to perform an act carries with it the necessity for the payment of money to make good the offer of performance as a condition to the performance of a concurrent condition by him to whom the offer is made.

Measured by the rules of law above set forth it is clear that the undisputed evidence shows that the so-called offer or tender by the plaintiff was entirely invalid or without legal force or effect.

The authorities cited by counsel for the respondent deal with cases which fall entirely within the terms of section 2076 of the Code of Civil Procedure and are not in point here. There is, as has been shown, no objection here to the amount of the money tendered, or the trust deed or the sufficiency thereof. The objection is, as pointed out above, that the plaintiff was wholly without ability, financially, to make good his purported offer to pay the defendants the sum of money specified therein and which it was necessary for him to pay to entitle him, under the contract of sale, to a deed to the premises. [6] The right to object to an offer to perform some act because of a fatal infirmity therein which does not come within those constituting valid grounds of objection thereto under section 2076 of the Code of Civil Procedure or other sections of our codes arises, of course, independently of statute, and is always available to him to whom the offer is made.

[7] To what has been said above it may be added that the fact that the party to whom the offer is made is also unprepared to perform does not furnish any justification for the inability of the offerer to perform, nor "change what would otherwise be an ineffectual and shadowy form into a substantial, *bona fide*, and effective tender." (*Doak* v. *Bruson*, 152 Cal. 17, 23 [91 Pac. 1001, 1004].)

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 23, 1925, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 22, 1925.