[S. F. No. 12075. Department One.—January 28, 1928.]

RICHARD PHELAN, Appellant, v. HILDA GRAVEL MINING COMPANY (a Corporation), Respondent.

George F. Witter for Appellant.

Frederick Appelman for Respondent.

SEAWELL, J.—The defendant was, during the year 1924, a mining corporation organized under the laws of this state,

with its principal place of business in the city and county of San Francisco, for the purpose of extracting gold from gold-bearing gravel. The mine is situate in the county of Sierra. Appellant with others had long been an owner of stock and a director of said corporation, which apparently had not proved remunerative to its stockholders. Its sale seems to have been under serious consideration by the stockholders and officers, and plaintiff, who was a strong advocate of disposing of said mine and who, also, was well acquainted with the past operation thereof, submitted to the board of directors, of which he was a member, on August 2, 1924, a proposed plan or proposition of sale. His suggestion was that the corporation "bond the property for $94,655, being $1.00 a share for all the outstanding stock"; require a cash payment for the value of all movable equipment on the property; demand a payment of $1,000 at the end of six months from date of contract; demand the sum of $2,500 every six months thereafter, together with twenty-five per cent of the gross output of the mine until the sum of $94,655 was paid. It was further suggested that a commission of twelve and a half per cent be allowed to anyone who should make a sale on the terms above outlined. In his communication he expressed the hope of making a sale on the terms above set forth if provided with a sketch showing the latest developments and improvements and the results of the operation of the mine and if privileged to send prospective purchasers to see the gold that had been extracted from the mine.

The communication was read at a regular meeting of the board of directors at which all members were present except director Richard Phelan. A motion was made and unanimously carried by which the secretary was "authorized to advise Mr. Phelan in writing of the acceptance of his suggestion." Two days thereafter, to wit, August 4, 1924, the secretary of said corporation wrote to Mr. Phelan as follows: "As Secretary I am instructed to advise that with the exception of the 12½ per cent commission figure, your suggestion was approved and the bonding terms as set forth are acceptable should you or anyone else be able to secure someone who would agree to those terms. As to the commission, it is decided that the amount of 10 per cent would be paid anyone consummating a sale on

that basis." Plaintiff immediately began negotiations for the sale of said mine with C. E. Shillingford, who testified that he was or had been a real estate agent and broker and about a year preceding the transaction under consideration had turned his attention to the sale and development of mining properties. His testimony showed that he had not the financial ability to finance the purchase, but that he was dependent upon negotiations with others for financial aid. In a letter written to Shillingford, September 1, 1924, Mr. Phelan said: "The price of the mine is $95,000, payable as follows: $1,000 after inspection if accepted; $1,000 six months thereafter, and $1,000 twelve months after signing papers; then $2,500 every six months thereafter, together with 25 per cent of the gross output from the mine, the same to apply on the purchase price of $95,000 until the full sum is paid." On the following day Shillingford, according to his testimony, affixed to the Phelan letter the following reply: "I accept the terms as above mentioned and am ready to deposit $1,000 in any Bank you desire, the money to be turned over to you when your Co. delivers to said Bank an agreement conforming to the terms mentioned herein properly signed and executed by the President and Secretary of your Company." Shillingford testified that he had had some prior conversations with Mrs. Clara F. Pixley touching the proposition of the bonding of said mine. Mrs. Pixley, upon whom Shillingford relied, was not shown to the satisfaction of the court to have been financially able to comply with the terms of the proposed contract of sale. Shillingford seemed to know but little as to her business calling, although he testified that she was his partner or was to become a partner with him in the operation of the mine. The agreement between Shillingford and Mrs. Pixley, as told by him, was that Mrs. Pixley was to put up the first $2,500 payment and she was to own a one-fourth interest in the mine and Shillingford was to retain a one-fourth interest for himself, and the one-half remaining interest was to be the fulcrum with which the money necessary to "finance the property" was to be raised. He was also to become the superintendent of the mine. He made no effort to show that he had the financial ability to meet the payments as provided by the contract, but relied upon Mrs. Pixley to whom he wrote a letter on September 2d in which

he repeated the terms set forth in the Phelan letter to Shillingford. In his letter he requested Mrs. Pixley to send him her check for $1,000 and to place $1,500 in a bank subject to his order. He further wrote that he would place the check with Mr. Phelan, and requested her to accompany him to the mine at her earliest convenience so the deal might be closed as the gravel had recently showed stronger in gold than it had ever showed before. On September 4th Mrs. Pixley replied: "Your letter of September 2nd received. I was glad to hear that you had been able to get a proposition from Mr. Phelan. I am enclosing my check for a thousand dollars, and I will arrange to give you the other $1,500 as you need it. I will try to have my affairs in shape so that we can go up and look at the property next Sunday." Mrs. Pixley inclosed with said letter a check drawn on the Mercantile Trust Company of California, dated September 4th, and payable to the order of C. E. Shillingford in the sum of $1,000. The directors in the meantime had decided that $95,000, in view of recent reports to the effect that the gravel was yielding a much heavier output of gold, was too low a price for the mine. On the fourth day of September Phelan resigned as a director. On September 5th the board met and offered to make a contract with Phelan for a commission on the basis of a $150,000 sale of the mine. The right of a director of the corporation to collect a commission on the sale of the corporation property had for some time past been a matter of doubt in the minds of all the directors, including Phelan. His resignation removed what was believed to be a legal obstacle to his right to collect a commission. The offer to enter into a new contract with Phelan was refused and in a spirit of disappointment and disgust he said that he wanted to get out of the corporation and offered his stock for sale, which was immediately purchased by one of the directors. The check of Mrs. Pixley had been given to him, but neither he nor Shillingford had ever offered it to the board of directors. Some time after this transaction the instant action was commenced. Mrs. Pixley was asked if she had sufficient money on deposit to meet the $1,000 check and replied that she did not know, but she could have had it in twenty minutes. She finally admitted that she did not have that sum in a checking account, but said that she had it in the

bank. No officer of the bank on which the check was drawn was produced to show the financial ability of Mrs. Pixley to meet the checks or to comply with the terms of the contract. ■ The burden was upon the plaintiff to show that Shillingford was able by himself or through financial connections to perform his part of the contract. Counsel argues that all that was required of Phelan in order to earn said commission, provided he was not disqualified by virtue of his office as director or the fact that he was not a licensed real estate broker, was to obtain someone who would agree to the terms of the contract, irrespective of said person's ability to perform the same.

Such a contention is wholly fallacious and requires no argument to combat it. To earn a commission on the sale of real estate the agent is required in all cases to produce a purchaser who is able to perform. ■ The court found that the plaintiff failed to introduce said C. E. Shillingford or any other prospective purchaser to defendant corporation or to any of its officers, and, further, that the plaintiff was not and never had been a licensed real estate broker or salesman, as provided by the act defining real estate brokers and salesmen and providing for the licensing of the same. (Stats. 1919, p. 1252.) The court's conclusion from the facts found was that the plaintiff failed to secure a *bona fide* purchaser for the real property of defendant. ■ We are of the opinion that Phelan was not qualified under the said act regulating real estate agents and brokers to demand a commission as the agent of the corporation. That he may have been clothed with authority to contract for the sale of the corporation's property as its representative or attorney-in-fact may be conceded, but a delegation of that authority would not immune him from the provisions of an act which was designed to operate uniformly upon all persons who engage themselves to act as real estate agents or salesmen for compensation. He was not the owner of the corporation real property by virtue of his office as a director. Neither his office nor his contract converted him into an owner of the corporation's real property within the meaning and intent of the clause of section 2 of said act, which exempts the owner of real property from a compliance with the provisions of said act in cases of sales made by him. A director, who as an individual contracts for the

payment of commissions on the sale of the corporation's real property, would not be relieved of any burden that the law imposes upon all persons who engage in a similar service. Appellant was at no time a licensed real estate broker. He cannot, therefore, maintain the action. (Stats. 1919, p. 1252, sec. 20.)

Another objection raised by respondent in resisting the payment of appellant's demands is that a director of a corporation is the representative of all the stockholders, and the interests of the stockholders forbid that he should place himself in a position where his personal interests would conflict with the duty he owes to those whom he officially represents. This case puts to a test the soundness of a policy which would permit a director of a corporation to enter into a contract whereby his personal interests, greatly outweighing his interests as a stockholder, would likely influence his action to the detriment of the other stockholders. In the instant case the directors of the corporation came to the view that $95,000 was far below the figure that could and should be obtained for its property. The interest of Phelan was greater as a real estate broker than it would have been as a stockholder. He was a member of the board of directors and the wisdom of selling the corporation property at the price of $95,000 was one that should have received the unbiased consideration of a full board of directors.

From what we have said it is unnecessary to consider whether or not the acts and statements of Mr. Phelan at the meeting of the board of directors, held September 5th, amounted to an abandonment of the said contract.

The judgment is affirmed.

Curtis, J., and Preston J., concurred.

Hearing in Bank denied.

All the Justices present concurred.