[Civ. No. 1421. Fourth Appellate District.—January 23, 1934.]

H. S. ABBOTT, Appellant, v. MARY KATE WATSON FLOYD, as Executrix, etc., Respondent.

U. F. Lewis and Fred A. Wilson for Appellant.

Halsey W. Allen for Respondent.

MARKS, J.—On September 20, 1926, J. A. Floyd executed a written authority to appellant to act as broker in the sale of a twenty-acre orange grove in San Bernardino County, upon which he and his wife lived. Appellant took several prospective purchasers to the property and on September 17, 1926, informed Mr. Floyd that he had an offer of purchase from J. D. Whitted and Ruth Esther Whitted, his wife, and tendered a certified check for $1,000 to apply on the purchase price. The written offer bore the signature "J. D. Whitted by H. S. Abbott, his attorney in fact". Some question was raised as to the authority of Abbott to sign the offer. He admitted that he had no written authority from Whitted. The certified check which he offered as a deposit on the purchase price was his own. Mr. Floyd informed him that he could not discuss the sale with him until on or after September 19th.

On September 18th appellant went to the city of Bakersfield, where he secured a general power of attorney from Whitted and his wife and had them attach their signatures to the written offer of purchase. On September 19th he returned to the house of Mr. Floyd and tendered the offer of purchase, together with the certified check. This offer was rejected by Mr. Floyd and he informed Abbott he had decided not to sell.

During the pendency of this action, Mr. Floyd died and respondent was appointed his executrix and substituted as defendant. A claim for the commission was filed by Abbott against the estate and was rejected.

The brokerage contract executed by Mr. Floyd specified $34,000 as the selling price of the property, with $5,000, or more, payable in cash, $4,000 payable the following June, and the balance "to suit" with interest at seven per cent per annum, payable semi-annually. The written offer to

purchase provided for the total price of $34,000, $5,000 cash to be deposited in escrow, $4,000 to be paid on June 1, 1927, and $3,000 per annum thereafter with interest at the rate of seven per cent per annum on the deferred payments.

Respondent urges that the written offer contained several variances from the terms specified in the written authority to the agent. From the view we take of the case, it will not be necessary to discuss these variances.

The trial court found that the prospective purchasers produced by appellant were not *able* to complete the purchase. Their total assets consisted of the following: $1100 in cash which was in the possession of the agent; a used automobile upon which they owed an unpaid balance of about $750 with an equity to themselves of not more than $400; a promissory note of $400 which had not been paid on June 10, 1932; $150 bonus payable from the state of Illinois to Whitted because of his enlistment in the World War; and an adjusted compensation certificate issued to Whitted by the United States government upon which $300 was paid a considerable time after he made the offer and before the trial.

Testimony was introduced to the effect that appellant, on behalf of the purchasers, had interviewed the manager of an orange distributing corporation in the city of Redlands and had obtained a statement that that corporation would loan the proposed purchasers $4,000 upon the crop of oranges then growing upon the real property. There was no consideration given for this representation which was not reduced to writing and was admittedly not enforceable.

The sole question which needs to be determined on this appeal is whether the prospective purchasers had the ability to make the purchase and perform the conditions of their offer.

It is part of the contract of a broker employed to sell property to produce a purchaser who is *able* to buy the property. (*Mattingly* v. *Pennie,* 105 Cal. 514 [39 Pac. 200, 45 Am. St. Rep. 87]; *Diamond* v. *Fay,* 23 Cal. App. 566 [138 Pac. 933].) The burden is upon the broker to prove that the prospective purchaser is financially able to make the purchase. (*Merzoian* v. *Kludjian,* 183 Cal. 422 [191 Pac. 673]; *Phelan* v. *Hilda Gravel Min. Co.,* 203 Cal. 264 [263 Pac. 520, 56 A. L. R. 476]; *Alison* v. *Chapman,* 36

Cal. App. 759 [173 Pac. 389].) An unenforceable promise of a third person to furnish part of the money to the prospective purchaser with which to make the down payment does not establish the fact that the proposed purchaser is able to make the purchase. "If the money for the purchase or sale is to be produced by some third person other than the customer, the broker has not produced a customer able to buy, and is not entitled to commissions." (4 Cal. Jur. 592; *Coger* v. *Wiltsey*, 117 Cal. App. 652–658 [4 Pac. (2d) 302]; *Tashjian* v. *Krikorian*, 55 Cal. App. 160 [202 Pac. 956]; *Merzoian* v. *Kludjian*, supra.) Without the loan of $4,000 the purchasers could not have made the $5,000 cash payment.

The case of *Merzoian* v. *Kludjian, supra,* is factually similar to the instant case and is authority for our holding that the finding of the trial court, that the prospective purchasers were not able to make the purchase, is supported by ample evidence. It is also authority upon which we must affirm the judgment.

■ Appellant seeks to avoid the effect of these decisions by contending that respondent cannot now urge the inability of the purchasers to buy the property because deceased told the broker that he had decided not to sell and did not specify the financial inability of the purchasers as a ground for rejecting their offer. This contention has been resolved against appellant in the case of *McCarthy* v. *Grider*, 72 Cal. App. 393 [237 Pac. 751].

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 22, 1934.