FREDERICK SCHANERMAN, PLAINTIFF-RESPONDENT, v. EVERETT AND CARBIN, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 28, 1952—Decided March 5, 1952.

Jayne, J. A. D., dissented.

.Before Judges McGeehan, Jayne and Wm. J. Brennan, Jr.

*Mr. Sylvester S. Garfield* argued the cause for respondent.

*Mr. Nicholas S. Schloeder* argued the cause for appellant.

The opinion of the court was delivered by

William J. Brennan, Jr., J. A. D. Defendant appeals from a judgment entered for plaintiff in the Law Division, Hudson County, upon a jury verdict.

The parties are licensed real estate brokers. · Defendant was paid a commission of $3,525 for effecting a sale at $90,000 of an apartment house of Prudential Insurance Company to G. M. E. and C. Corporation. Plaintiff's judgment amounts to one-half of that commission plus interest.

. We need consider only one ground of error alleged, namely, that the trial court improperly denied defendant's motion for involuntary dismissal at the end of plaintiff's case.

■ Accepting plaintiff's evidence as true and giving him. the evidential benefit of all inferences logically and legitimately to be drawn therefrom, *Marschalk v. Weber*, 11 *N. J.*

*Super.* 16 (*App. Div.* 1950), certif. den., 6 *N. J.* 569 (1951), he proved that C. V. Everett, defendant's president, employed him to produce a buyer "ready, willing and able" to buy the property at the same $90,000 price paid by G. M. E. and C. Corporation, and promised to pay one-half of the commission "coming from Prudential" for the services, telling him that G. M. E. and C. Corporation regretted its bargain and "wanted to get out from under" the contract. Plaintiff produced one Driver, and Everett accepted Driver's $500 check as an initial deposit. Everett prepared a proposed contract between G. M. E. and C. Corporation and Driver for a sale at $90,000 to be closed May 15, 1950. Driver's attorney suggested some changes to which Everett agreed. Driver executed the instrument and it was delivered to Everett together with Driver's $3,000 "deposit" check. However, G. M. E. and C. Corporation refused to sign the agreement. On April 27, 1950, Everett sent the $500 and the $3,000 checks to plaintiff for return to Driver with a letter stating "very much to my surprise and chagrin Mr. Garfinkel and Mr. Mettle concluded at the last moment that they will not dispose of the property at this time." Garfinkel and Mettle are principals of the G. M. E. and C. Corporation.

Defendant's motion was grounded in part on the alleged absence of sufficient proof at the trial of Driver's financial readiness and ability to complete the purchase. The terms of payment provided in the proposed agreement are $3,000 "deposit," $20,500 "cash" on delivery of deed, and $66,500 "subject to a first purchase money mortgage held by Prudential Insurance Company." The $3,000 "deposit" was made, which sufficed as evidence to prove Driver's ability to meet that part of the purchase price; and, as the conveyance was to be "subject to" the $66,500 mortgage, no evidence of financial readiness and ability was necessary as to that amount. There was, however, insufficient evidence that Driver was prepared and able to meet the $20,500 "cash" payment. His payments aggregating $3,500 are not *prima facie* proof of his ability to meet the much larger payment at

its due date. *Cf. Homan v. Griffin,* 94 *N. J. L.* 345 (*Sup. Ct.* 1920).

 In accordance with general principles governing the burden of proof in civil actions, plaintiff was obliged to bear the burden of establishing that he had performed his agreement. 8 *Am. Jur., Brokers, sec.* 222, *p.* 1117. Proof of performance in a case such as this must usually include proof of the financial readiness and ability of the offered purchaser to complete the transaction. The broker is not relieved of the burden of proof of establishing the purchaser's readiness and ability to complete the transaction merely because, as here, when the offer was presented there was no objection on the ground that the purchaser was not ready, willing and able to buy. *Colburn v. Seymour,* 32 *Colo.* 430, 76 *P.* 1058 (*Colo. Sup. Ct.* 1904); *C. O. Frick Co. v. Baetzel,* 71 *Ohio App.* 301, 47 *N. E.* 2d 1019 (*Ct. App. Ohio,* 1942); *Dreyfuss et al. v. Boling,* 60 *A.* 2d 230 (*Mun. Ct. App. D. C.* 1948); *Abbott v. Floyd,* 136 *Cal. App.* 365, 28 *P.* 2d 929 (*Dist. Ct. App.* 1934); *Annotation,* 156 *A. L. R.* 602, 611; but see *Stanton v. Barnes,* 72 *Kan.* 541, 84 *P.* 116 (*Kan. Sup. Ct.* 1906). Of course, plaintiff earned his commission if he performed his engagement, whether or not G. M. E. and C. Corporation accepted Driver's offer; the contract, as testified to by plaintiff, did not condition the payment of the commission upon the owner's acceptance of any offer produced, and defendant is liable if the offer, though rejected, met the authorized terms. But when Driver's offer was rejected, neither G. M. E. and C. Corporation nor Everett was questioning plaintiff's services or Driver's financial readiness and ability. In effect the property was withdrawn from the market and plaintiff's agency was terminated. If at that time plaintiff had performed his services he was entitled to his commission; otherwise, he was not. The burden, however, was upon him to show that he had performed and an essential element of his proof of performance was that Driver was a purchaser ready, able and willing to buy. *Dreyfuss v. Boling, supra.*

What was said in the *Seymour* case by the Colorado Supreme Court may be adapted to the situation here:

"* * * The refusal * * * to consummate the sale has not damaged the plaintiff, unless he can show that (if the owner had not decided not to sell) * * * the sale would have been made. How can he show this, except by proving that at the time the contract was repudiated, * * *, he was in a position to have effected a sale in conformity with the conditions under which the property was placed in his hands? Certainly he has not been prevented from earning his commissions by the mere fact that the (owner) refused to sell the property unless he proves that, but for the conduct of the (owner), the sale would have been consummated. The refusal of the owner to sell according to contract does not prove—neither does it raise a presumption—that the alleged purchaser was able to purchase, but renders the (defendant) liable * * * for commissions, the same as though the sale had actually been effected, provided the (plaintiff) establishes that the proposed purchaser was ready, able, and willing to make the purchase upon the terms stipulated by the owner * * *.

* * * (Plaintiff) must show, before he is entitled to recover his commissions, that he performed those acts which, according to the contract of his employment, it was necessary for him to perform in order to become entitled to the compensation agreed upon."

To hold otherwise it would be necessary to rule that when defendant advised plaintiff that the owner had decided not to sell, and that the deal was off, defendant thereby agreed to pay plaintiff a commission although he had not performed his services and had presented a worthless offer. "Such is not the law. In order to recover (his) commission it was incumbent upon (him) to prove that (he) had earned it." *Dreyfuss v. Boling, supra.*

Plaintiff argues, however, that Everett accepted Driver as a purchaser and in that circumstance it was unnecessary to prove in any respect Driver's pecuniary readiness and ability to complete the transaction, relying on *Thompson v. Briscoe,* 108 *N. J. L.* 387 (*E. & A.* 1931) and *Calabrese v. Adelman,* 7 *N. J. Misc.* 406 (*Sup. Ct.* 1929). Neither of those cases is controlling here. In the *Thompson* case, unlike this one, the owner executed the proposed contract with the purchaser

produced by the plaintiff broker and for that reason it was held that the defendant broker could not escape paying the plaintiff the promised commission by saying that the purchaser was thereafter unable to conclude the bargain. In the *Calabrese* case there was evidence to support the finding that the agreement was that the commission was payable if the plaintiff produced a buyer acceptable to defendant; it was only after the defendant came to a satisfactory understanding with the purchaser produced by the broker that "the defendant stated for the first time that he was not the owner."

Here, the plaintiff knew that G. M. E. and C. Corporation, and not the defendant, was the owner and that his engagement was to effect a sale for G. M. E. and C. Corporation. The proofs do not show that the defendant's agency included the authority to accept a proposal on behalf of G. M. E. and C. Corporation, and without such proof there is no basis for the contention that the case is within the holding in *Thompson v. Briscoe, supra*. Plaintiff was aware, therefore, that G. M. E. and C. Corporation was free to and might reject, as it did, the offer of a purchaser produced by plaintiff who was tendered by him as ready, willing and able to meet the terms of sale. Thus, there being no evidence sufficient to support an inference either that Everett bound defendant to pay the commission whether or not the owner accepted the proposal, provided plaintiff produced a buyer satisfactory to Everett, (which is the deficiency in the proof which distinguishes *Calabrese v. Adelman*), or that defendant had authority to bind the owner to a sale, plaintiff was not relieved of the burden of establishing Driver's financial readiness and ability to complete the transaction. See *S. Hekemian & Co. v. Rivara*, 121 *N. J. L.* 418 (*Sup. Ct.* 1938), affirmed 122 *N. J. L.* 523 (*E. & A.* 1939) ; *Homan v. Griffin, supra;* cf. *Mutchnick v. Davis*, 130 *App. Div.* 417, 114 *N. Y. S.* 997 (1909).

Plaintiff also argues that, because defendant specified only the denial of the making of any agreement as a defense in the pretrial order, plaintiff was obliged to meet only that

issue. This plainly is without merit. The question of Driver's financial readiness and ability was put in issue by defendant's answer denying the allegations of paragraph 5 of the complaint that "plaintiff produced a purchaser, ready, willing and able to purchase said premises." *Rule* 3:16 as amended and in effect at the time of the pretrial conference provides that the pretrial order *"with the pleadings* as ordered to be amended controls the subsequent course of action, unless modified at the trial to prevent manifest injustice." Neither expressly nor inferentially is there an admission in the pretrial order of Driver's financial readiness and ability nor any waiver of proof of that fact. In light of the amended rule mere omission to iterate therein the denial in the answer does not have the effect of such admission or such waiver.

The judgment is reversed and the cause is returned to the Law Division for a new trial.

Costs to abide the event.

JAYNE, J. A. D. (dissenting). My conception of the characteristics of this case constrains me to dissent from the conclusion expressed in the majority opinion. In obedience to *Rule* 4:4–6 I shall tersely state the basic reasons for my disagreement.

I assent to the following postulate put forward by the majority:

"Of course, plaintiff earned his commission if he performed his engagement, whether or not G. M. E. and C. Corporation accepted Driver's offer: the contract, as testified to by plaintiff, did not condition the payment of the commission upon the owner's acceptance of any offer produced, and defendant is liable if the offer, though rejected, met the authorized terms. But when Driver's offer was rejected, neither G. M. E. and C. Corporation nor Everett was questioning plaintiff's services or Driver's financial readiness and ability. In effect the property was withdrawn from the market and plaintiff's agency was terminated. If at that time plaintiff had performed his services he was entitled to his commission; otherwise, he was not."

The opinion continues: "The burden, however, was upon him to show that he had performed and an essential element

of his proof of performance was that Driver was a purchaser ready, able and willing to buy." If recognized as an abstractly stated academic principle, I have no inclination to impugn it.

Our divergence of opinion seems to originate from a dissimilar interpretation of the evidence and consequently its appearance from a legal viewpoint.

It is obvious from an observance of the citations contained in the majority opinion that my associates consider the same rules and principles of law which pertain to a contractual relationship between a broker and an owner to be applicable to the agreement of employment with which we are concerned in the present case.

If I were to yield to that assumption, I would nevertheless be obliged to disagree with their conclusion. Here, the only reason assigned by the president of the defendant corporation for the refusal to consummate the contract of purchase to which the purchaser procured by the plaintiff had legally committed himself by the execution of the contract and by making the requisite deposit of $3,000 was that "very much to my surprise and chagrin Mr. Garfinkel and Mr. Mettle concluded at the last moment that *they will not dispose of the property at this time."* (Emphasis mine.)

In this situation I perceive the more preferable rule of law to be that where a broker produces a purchaser who executes a binding contract to buy in accordance with the owner's terms of sale, the owner's refusal to execute the contract without a valid reason, *viz.,* as here, merely abandoning his desire to sell, is arbitrary and capricious and that the broker in order to recover his commission is not required in such circumstances affirmatively to prove the purchaser's ability further to perform his undertaking. *Jacobs v. Rothschild,* 197 *Pac.* 2d 951 (*Sup. Ct., Okla.,* 1948—rehearings denied) ; *Stokes v. Wolf,* 112 *A.* 566 (*Ct. App. Md.,* 1921) ; *Rifkind v. Turner,* 52 *A.* 2d 501 (*Mun. Ct. App. D. C.,* 1947) ; *Stanton v. Barnes,* 72 *Kan.* 541, 84 *P.* 116 (*Sup. Ct.* 1906) ; 156 *A. L. R.* 602.

Moreover I think it is the settled law that an owner cannot thereafter assert as a defense to an action for the broker's commission improvised reasons and grounds for his refusal which were not manifested at the time and as a basis for the rejection of the offer. In *Volk v. Atlantic Acceptance & Realty Co.,* 139 *N. J. Eq.* 171 (*Ch.* 1947), I made the comment: "Upon the institution of this suit, learned counsel have been able to supply the defendant with some auxiliary reasons * * *."

Therefore if it is to be determined that the conduct of the owner is relevant in the present action, the evidence persuades me that the rules to which I have adverted are accordingly applicable.

I entertain the impression that my colleagues have too improvidently cast aside the realities of the present case. I am influenced by the fact that the defendant, not the owner, engaged the services of the plaintiff. The agreement in suit was one solely between the plaintiff and the defendant. The president of the defendant participated in the preparation of the written contract of sale which was duly executed by the purchaser, accepted delivery thereof, received the deposit, and ultimately expressed his "surprise and chagrin" at the arbitrary refusal of the defendant's client to consummate the bargain. The jury evidently believed, and I think with abundant justification, that the plaintiff fully and satisfactorily performed all the services expected of him by the defendant pursuant to the agreement of employment.

The course of reasoning pursued by the majority is exposed by the following excerpt from the prevailing opinion:

"Here, the plaintiff knew that G. M. E. and C. Corporation, and not the defendant, was the owner and that his engagement was to effect a sale for G. M. E. and C. Corporation. The proofs do not show that the defendant's agency included the authority to accept a proposal on behalf of G. M. E. and C. Corporation, and without such proof there is no basis for the contention that the case is within the holding in *Thompson v. Briscoe, supra.* Plaintiff was aware, therefore, that G. M. E. and C. Corporation was free to and might reject, as it did, the offer of a purchaser produced by plaintiff who was

tendered by him as ready, willing and able to meet the terms of sale. Thus, there being no evidence sufficient to support an inference either that Everett bound defendant to pay the commission whether or not the owner accepted the proposal, provided plaintiff produced a buyer satisfactory to Everett, (which is the deficiency in the proof which distinguishes *Calabrese v. Adelman*), or that defendant had authority to bind the owner to a sale, plaintiff was not relieved of the burden of establishing Driver's financial readiness and ability to complete the transaction."

It is my conviction that the foregoing dialectics are built upon the sands of irrelevancy and sophistry. This plaintiff was employed by the defendant to solicit a purchaser whom the defendant could for its own benefit introduce to its client. Whom the defendant might employ for its purpose was no affair of the owner. The existence of a relationship of principal and agent between the owner and the defendant was wholly immaterial. Nor does the fact that the plaintiff had knowledge of the name of the owner have any legal importance. Why was the plaintiff obliged to prove that his employer had "the authority to bind the owner to a sale?" Moreover, do not all brokers understand that the owner is "free to and might reject" without just cause and at his peril "the offer of a purchaser?"

It is the introduction of those subjects of consideration in the review of the present case that also arouses my disapproval.

Lastly, I am not convinced that the evidence disclosing that the purchaser executed the contract to buy, made the requisite initial payment, and that the owners declined to complete the bargain only because they "concluded at the last moment that they will not dispose of the property at this time," did not constitute *prima facie* proof of the recognized ability of the purchaser to perform, sufficient to oblige the defendant to go forward with evidence of the purchaser's financial inability.

For those reasons I record my dissent.