FREDERICK SCHANERMAN, PLAINTIFF-APPELLANT, *v.* EVERETT AND CARBIN, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued June 9, 1952—Decided June 26, 1952.

*Mr. Sylvester S. Garfield* argued the cause for the appellant.

*Mr. Nicholas S. Schloeder* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, with one judge dissenting, reversed the judgment for plaintiff entered pursuant to a verdict by the jury in his favor. See 18 *N. J. Super.* 248 (1952). The plaintiff has duly appealed to this court under *Rule* 1:2–1.

The defendant, Everett and Carbin, Inc., a licensed real estate broker, was engaged by the Prudential' Insurance Company to effect the sale of property located at 22 Lexington Avenue, Jersey City. An offer of $90,000 was received and accepted and a contract was executed and assigned to the

purchaser G. M. E. & C. Corporation. Thereafter G. M. E. & C. Corporation indicated its desire to withdraw from the transaction and in April, 1950, C. V. Everett, president of the defendant, spoke about the matter to the plaintiff, a licensed real estate broker. The plaintiff's version, which the jury accepted, was that Everett told him that the purchaser wanted "to get out from under" and that if he could produce a ready, willing and able buyer at $90,000 the defendant would pay the plaintiff one-half of the "full commission coming from the Prudential Insurance Company." Everett's version was that he told the plaintiff that "we had that property for sale; the people thought they would like to dispose of their contract; and that they wanted $95,000." In due course the plaintiff produced a purchaser named Driver, and Everett accepted Driver's check in the sum of $500 as the initial deposit and delivered a proposed contract of sale for $90,000. Driver's attorney made certain changes in the contract which were approved by Everett and thereupon Driver signed the contract and a check for $3,000, as provided therein, and both the contract and check were delivered to Everett. A title search was ordered by Driver's attorney and the tentative closing date of May 15 was fixed. However, the proposed contract was never signed by G. M. E. & C. Corporation and under date of April 27, 1950, Everett sent a letter to the plaintiff returning Driver's $500 and $3,000 checks and stating that much to his surprise and chagrin the principals of G. M. E. & C. Corporation had "concluded at the last moment that they will not dispose of the property at this time." G. M. E. & C. Corporation apparently retained the property and the defendant was paid the full commission of $3,525 by the Prudential Insurance Company.

Upon the defendant's refusal to pay the plaintiff one-half of the commission the plaintiff instituted his action in the Law Division alleging the defendant's agreement to pay if he produced a purchaser ready, willing and able, his production of such purchaser, and the defendant's breach. The defend-

ant's answer denied generally the pertinent allegations in the complaint and in separate defenses asserted that it did not engage the plaintiff to sell the property, did not agree to pay him one-half of the commission due from the Prudential Insurance Company, and there was no "privity of contract" between the parties. In the pretrial order dated April 4, 1951, and signed by the court and the attorneys for the parties the only defensive matters are embodied in paragraph 2 which states that the defendant "denies that there was any agreement; admits that he did collect commission and that he was entitled to it." At the trial the plaintiff introduced evidence supporting his claim and at the close of his case the defendant moved for dismissal on the ground that the plaintiff had not presented any affirmative proof as to the financial ability of the purchaser Driver to fulfill the terms of the proposed contract executed by him. This motion was denied, the defendant introduced evidence supporting its position that the agreement alleged by the plaintiff had never been entered into, and the cause was duly submitted to the jury which found for the plaintiff. On appeal the main issue presented is whether the trial court properly denied the motion for dismissal.

██ We are satisfied that under the particular circumstances presented the motion based on the lack of affirmative proof of the purchaser's financial ability was properly denied. In the first place we incline to the view that under the pretrial order that issue was excluded. It is true, as the Appellate Division pointed out (18 *N. J. Super.* 255), that since the amendment of *Rule* 3:16 in December, 1949, the pretrial order "with the pleadings" controls the subsequent course of the action. But in reading the original pleadings and the pretrial order it must be remembered that the pretrial order is later in time and its purposes still include the narrowing of the issues and the elimination of "surprise and maneuvering." See *Hensgen Bros., Inc., v. Grip,* 13 *N. J. Super.* 105, 111 *(App. Div.* 1951). *Cf. Hodgson v. Pohl,* 9 *N. J.* 488 (1952). In the instant matter the issue as to

Driver's financial ability was sought to be raised for the first time at the close of the plaintiff's case. The prior circumstances including the letter of April 27, 1950, in no manner suggested that the financial ability of Driver was being questioned and although the answer did contain blanket general denials its affirmative defenses did not bear on that issue. The pretrial order likewise did not bear on it but, on the contrary, simply asserted that the defendant denied that there was any agreement with the plaintiff and was entitled to retain its full commission. It did not fairly apprise the plaintiff that the issue of financial ability would be raised and understandably led the plaintiff's attorney to assert, as he did during the trial, that "The pretrial order provides that the only issue we have here is whether there was an agreement between the plaintiff and the defendant." See *Binder v. Green*, 8 *N. J. Super.* 88, 94 (*App. Div.* 1950).

In the second place, we consider that under the evidence the plaintiff was not under any burden to establish affirmatively that Driver was financially responsible. Driver duly executed the contract and complied with its preliminary terms, and Everett in approving the contract and accepting it together with Driver's checks, presumably considered him to be a qualified purchaser. See *Calabrese v. Adelman*, 7 *N. J. Mis. R.* 406, 408 (*Sup. Ct.* 1929); *Thompson v. Briscoe*, 108 *N. J. L.* 387, 389 (*E. & A.* 1931); *Homan v. Griffin*, 94 *N. J. L.* 345, 347 (*Sup. Ct.* 1920). The prospective seller in refusing to execute the contract asserted simply that it was withdrawing the property from the market and did not question the buyer's financial ability; indeed, if the buyer's financial ability had then been questioned he might have readily furnished the proof or security to obviate the question. See *Rosenblatt v. Bergen*, 237 *N. Y.* 88, 142 *N. E.* 361 (*Ct. Apps.* 1923); *Mulchnick v. Davis*, 130 *App. Div.* 417, 114 *N. Y. S.* 997, 999 (*App. Div.* 1909); *Sherwood v. Rosenstein*, 179 *Minn.* 42, 228 *N. W.* 339 (*Sup. Ct.* 1929); 156 *A. L. R.* 602, 612 (1945). The situation, as we see it, is that the issue of financial ability had no part

whatever in the matter and was first raised at the trial, as an afterthought, in aid of the defense. Compare *Rode & Brand v. Kamm Games,* 181 *F.* 2d 584, 587 (*C. C. A.* 2 1950) where the court said:

"And our court has held, in *Vernon Lumber Corp. v. Harcen Const. Co.,* 2 *Cir.,* 155 *F.* 2d 348, 351, that a party to a contract may not repudiate the contract on one ground and later assert entirely different grounds as a defense for such refusal to perform. It is of course familiar tactics for buyers, caught by a drop in the cost of goods or failure to sell them as planned, to seek some *a posteriori* justification for nonacceptance—compare *Comment, Remedies for Total Breach of Contract under the Uniform Revised Sales Act,* 57 *Yale L. J.* 1360, 1363—but the law does not look with favor on this method of avoiding the consequences of unfortunate business ventures."

See also *Ohio & Mississippi Ry. Co. v. McCarthy,* 96 *U. S.* 258, 267, 24 *L. Ed.* 693, 696 (1878); *Robb v. Crawford,* 56 *App. D. C.* 394, 16 *F.* 2d 339, 341 (*D. C. Cir.* 1926).

In situations comparable to that before us many courts have invoked doctrines of waiver and estoppel to preclude the defendant from urging the financial inability of the buyer where the transaction failed to consummate on wholly unrelated grounds. See *Moss v. Warns,* 245 *Wis.* 587, 15 *N. W.* 2d 786, 787 (*Sup. Ct.* 1944); *Sherwood v. Rosenstein, supra; Rosenblatt v. Bergen, supra; Paris v. O'Harro,* 100 *Okl.* 264, 229 *P.* 161, 162 (*Sup. Ct.* 1924); *Crow v. Casady,* 191 *Iowa* 1357, 182 *N. W.* 884, 886 (*Sup. Ct.* 1921); *Young v. Metcalf Land Co.,* 18 *N. D.* 441, 122 *N. W.* 1101, 1105 (*Sup. Ct.* 1909); *Stanton v. Barnes,* 72 *Kan.* 541, 84 *P.* 116, 117 (*Sup. Ct.* 1906); 12 *C. J. S., Brokers,* § 95, *p.* 224 (1938); 156 *A. L. R.* 602, 611 (1945). But see *Dreyfuss v. Boling,* 60 *A.* 2d 230 (*D. C. Mun. App.* 1948); *Abbott v. Floyd,* 136 *Cal. App.* 365, 28 *P.* 2d 929, 930 (*Dist. Ct. App.* 1934); *Colburn v. Seymour,* 32 *Colo.* 430, 76 *P.* 1058 (*Sup. Ct.* 1904); *C. O. Frick Co. v. Baetzel,* 71 *Ohio App.* 301, 47 *N. E.* 2d 1019 (*Ct. Apps.* 1942). Under like facts many other courts, while declining to rest upon doctrines of waiver and estoppel, have fairly, in view of the compelling antece-

dent circumstances, placed the burden of proving the buyer's financial inability upon the defendant. See *Shaffer v. Berger*, 81 *A.* 2*d* 469, 472 (*D. C. Mun. App.* 1951); *Jacobs v. Rothschild*, 200 *Okl.* 599, 197 *P.* 2*d* 951, 953 (*Sup. Ct.* 1948); *Stokes v. Wolf*, 137 *Md.* 393, 112 *A.* 566, 573 (*Ct. Apps.* 1921); *Dotson v. Milliken*, 27 *App. D. C.* 500, 515 (1906), affirmed 209 *U. S.* 237, 28 *S. Ct.* 489, 52 *L. Ed.* 768 (1908); *Davis v. Morgan*, 96 *Ga.* 518, 520, 23 *S. E.* 417, 418 (*Sup. Ct.* 1895); *McFarland v. Lillard*, 2 *Ind. App.* 160, 28 *N. E.* 229, 231 (*App. Ct.* 1891); cf. *Heyward v. Kirsch*, 77 *A.* 2*d* 551, 552 (*D. C. Mun. App.* 1950). Under either view the trial court's denial of the defendant's motion for dismissal must be sustained.

 The defendant contends that certain evidential rulings by the trial court constituted error requiring a new trial. In the course of the plaintiff's examination he admitted that the defendant had on other occasions given him listings on other properties. He was then asked whether he was "successful in negotiating some sales as a result of obtaining those listings." Objection to this question was properly sustained since the information sought to be elicited dealt with routine listings which bore no relation to the particular transaction involved and was immaterial. The plaintiff was also not permitted to answer whether he knew if the defendant paid "half the commission that they received from the Prudential Insurance Company to anyone." This information would presumably be hearsay and in any event appears to be immaterial in view of the single factual issue controverted at the trial. We find no prejudicial error in the rulings complained about.

Reversed, with direction that the judgment for plaintiff in the Law Division be reinstated.

*For reversal*—Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—4.

*For affirmance*—Chief Justice VANDERBILT—1.