[Civ. No. 4018. First Appellate District, Division Two.—November 12, 1921.]

## S. K. TASHJIAN, Appellant, v. G. KRIKORIAN, Respondent.

[1] BROKER'S COMMISSION—SALE OF REAL PROPERTY—FINANCIAL INABILITY OF PURCHASER—SUFFICIENCY OF EVIDENCE.—Where on appeal from the judgment in an action to recover a commission under a written contract authorizing a sale of real property the record contains evidence to support the finding regarding the financial inability of the person secured by the plaintiff to make the purchase, the finding will not be disturbed, and upon such a finding judgment for the defendant was properly rendered.

[2] ID.—FINANCIAL ABILITY TO PURCHASE—EVIDENCE.—Financial ability to make a purchase of real property is not shown by the statement of the proposed purchaser of confidence in his ability to borrow the money, in the absence of a showing of a legal obligation on the part of someone to make the loan.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. W. Carlson and Walter Sorenson for Appellant.

Arsen Yeretzian for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against him in an action to recover commissions

alleged to be due him upon a written contract with the defendant for the sale of defendant's real property in Fresno County.

The trial court found that neither during the term of the agreement between the parties nor thereafter did the plaintiff find a purchaser for the property who was ready, willing, and able or ready, or willing and able to purchase said premises according to the terms of said agreement.

[1] There is only one question presented to us upon appeal, and that is the sufficiency of the evidence to sustain this finding.

While this court is, necessarily, always bound by the findings of a trial court in a case where the evidence is conflicting, there are, nevertheless, certain types of cases in which this rule is more peculiarly efficacious than in others. The record here presents such a case. Almost all the witnesses, including the parties to the action, struggled to express themselves in a language which was unfamiliar to them. This difficulty, added to their apparent confusion when called upon to remember and state accurately and precisely important matters, leaves the printed pages rather meaningless and contradictory in many instances. It is in such situations that the trial judge is able and empowered to use his broad experience with witnesses and his observation of their manner upon the stand, and the innumerable other intangible things which throw light upon the testimony of a witness, in order to clarify vague and uncertain statements, to reconcile contradictions, and explain inconsistencies. Without such aids, it would be difficult indeed to arrive at the facts in records such as the one before us upon this appeal.

We are bound to assume that all statements appearing in the record, or matters reasonably inferable therefrom, which support the finding of the trial court are true, and that statements in conflict therewith are not true. In the light of such an assumption, we have this picture: Plaintiff is a real estate dealer, and through his agency, the defendant has purchased a vineyard, the subject of this controversy. Before said purchase was completed, it was suggested that plaintiff resell the vineyard for the defendant at a price in excess of the amount he had paid for it. Such an agreement was entered into between the parties,

55 Cal. App.—11

and after the defendant had become the owner of the vineyard, this agreement was delivered to the plaintiff. By this agreement, plaintiff was to have the right to sell the vineyard and some personal property for sixty thousand dollars; sixteen thousand dollars cash, balance in annual payments of ten thousand five hundred dollars. Plaintiff was to receive two thousand four hundred dollars commission upon such a sale. This agreement was dated January 7, 1920. On Saturday afternoon, which plaintiff stated was about February 5th, but which the calendar discloses was February 7, 1920, the plaintiff called at defendant's ranch with Mr. Keoseyan. The plaintiff asked the defendant for a few days additional time in which to find a purchaser, stating that his time to carry out his contract was about to expire. This the defendant refused, stating that the time was up that day. Keoseyan looked about the ranch and asked some questions regarding the crop, stating at the same time that he did not wish to buy the place. After several requests by the plaintiff that the defendant extend the time within which the plaintiff might sell the ranch, and defendant's repeated refusals to do so, plaintiff and Keoseyan left the ranch. On the way into Fresno, plaintiff offered to give Keoseyan the two thousand dollars of his two thousand four hundred dollar commission if he would sign a contract to purchase the defendant's ranch, plaintiff stating at the time that he was going to lose the commission entirely if he didn't make a sale at once. The parties then drove into Fresno and stopped their automobile on a street corner and Keoseyan signed a preliminary agreement and gave plaintiff his check for one hundred dollars. Plaintiff then went to a restaurant and met there another real estate dealer, and took him out to the defendant's ranch as "a witness" to the scene which he seemed to have anticipated, and in which, apparently, he wished to be fortified with legal testimony. Plaintiff and "his witness" reached defendant's ranch about 9 o'clock in the evening and plaintiff called the defendant out of his house and told him he had sold the ranch and had taken a deposit of one hundred dollars, and demanded that defendant sign and approve the preliminary agreement. Defendant was unable to read English, and stated that he would consult his attorney in Fresno on the next day and would sign no agreement until

it was explained by his attorney; that plaintiff should come
to the attorney's office on Monday and "fix" it up. Plain-
tiff then handed to defendant a written notice signed by
himself and by his "witness" Knapp, which read as follows:
"I herewith hand you notice notifying you that I have
this day sold your place, and have a deposit on it being
the lot No. 9 & 10 in Indianola Colony in section No. 10,
Township 14, south range 22." On the following day,
Sunday, Keoseyan took his family to the property and
looked over the ranch to see if the place was "any good";
"if the place was not any good, I lose one hundred dollars
and give it up." On Monday morning, the defendant came
to Fresno to the office of his attorney and later he found
the plaintiff on the street and together they went to the
office of defendant's attorney. There the defendant asked
the plaintiff to let him see the preliminary contract.
Plaintiff refused to produce the contract but said he would
bring the purchaser. He failed to bring the purchaser
to the defendant on Monday, and failed again on Tuesday,
but finally found him and brought him to the office of the
defendant's attorney on Wednesday. The plaintiff and
purchaser were accompanied at this interview by an attor-
ney, and discussions and negotiations were entered into
with regard to numerous matters such as the amount of
the deposit, interest upon the unpaid balance, etc., resulting
in the parties separating without signing any contract for
the purchase and sale of the property. The details of this
interview are not material, according to the view we take
of this record, because it does not appear from the evidence
that the purchaser was able to buy the property according
to the terms of the written contract between the plaintiff
and defendant.

The facts herein recited as preliminary to this main
interview are set out as throwing some light upon the char-
acter of this entire transaction. The crucial point is that
the contract between the parties called for a cash payment
of sixteen thousand dollars. Keoseyan testified: "Q. Now,
just a while ago you said you had about ten thousand
dollars in the bank. How do you know it was ten thousand
dollars? A. I don't know. I said, 'I think I have ten
thousand dollars'; I am not sure— The Court: Just a min-
ute; do you think you had ten thousand dollars in the

Farmers' Bank? A. I think; I am very sure. Q. Did you have any other money more? A. Yes, I had a little at the Selma First National Bank. Q. How much? A. It is in still and I had some in Reedley First National Bank. Q. How much money did you have altogether? A. I think I had over ten thousand dollars anyway, altogether, and I can raise two thousand five hundred dollars. Q. Wait a minute. Had you made any arrangement to get the balance of it? A. No, I did not.''

[2] It is true Keoseyan testified that he bought other property two months later, but there is no evidence of what he paid for the other property or of how much cash he paid, or of any other definite matters from which one must conclude that he would have had sixteen thousand dollars available two months earlier. His statement that he was sure he could have borrowed the money from someone, without showing that there was anyone legally bound to loan him this money, is insufficient to establish his financial ability to make this purchase. This question is considered in the case of *Mattingly* v. *Pennie*, 105 Cal., at page 522 [45 Am. St. Rep. 87, 39 Pac. 203], where it is said: ''That testimony amounted to nothing more than a statement of his belief that persons not bound by contract to do so would have advanced the money; and it is clearly not such evidence as, under section 1835 of the Code of Civil Procedure, would justify the jury in finding that he had the ability to pay.''

The record contains evidence to support the finding of the trial court regarding the financial inability of the purchaser secured by plaintiff to make the purchase. Under such circumstances, we will not disturb that finding, and upon such a finding the judgment was a proper one.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.