[Civ. No. 3563. Third Appellate District.—October 30, 1928.]

R. V. JONES, Jr., Appellant, v. MAYE D. STEVENS et al., Respondents.

Andrew J. Copp, Jr., for Appellant.

W. I. Gilbert for Respondents.

HART, J.—This is an action for damages for the alleged breach by the defendants of a building contract.

The cause was tried by the court, sitting without a jury, and judgment passed for the defendants. The plaintiff appeals upon a record prepared in accord with sections 953a and 953b of the Code of Civil Procedure.

The nature of the contract upon which this action is founded is in substance well explained in the complaint as follows:

"On or about the 11th day of December, 1923, at the City of Los Angeles, County of Los Angeles, State of California, plaintiff and defendants made and entered into a contract in writing dated the 11th day of December, 1923, wherein and whereby plaintiff therein designated as contractor and architect, agreed to furnish and provide necessary labor and materials, tools, implements and appliances, and to do and perform in a good and workmanlike manner, the preparing and drawing of plans and specifications and the construction of an apartment house in accordance therewith upon that certain real property owned by said defendants in the City of Los Angeles, County of Los Angeles, State of California, described as follows, to-wit:

"East Half of Lot Four (4), Block Nine (9), of Los Angeles Homestead Tract. Said lot being 52.75 x 177 feet.

"Construction work to commence on or about the 1st day of March, 1924, and said defendants promised and

agreed to pay plaintiff therefor, as contractor in the construction of said Thirty-two-room apartment house, the actual net cost of materials furnished and labor performed by plaintiff thereunder in the construction of such building, plus a profit of Ten (10%) per cent. thereof, and said defendants further promised and agreed to pay plaintiff as compensation for services in drawing such plans and specifications and the performance of services as architect as might be required on and in the construction of said building an additional sum of Five (5%) per cent. of the estimated cost of construction, which said estimated cost was fixed at the sum of Thirty-two Thousand ($32,000) Dollars, which Five (5%) per cent. was to be paid to said plaintiff in addition to the sums otherwise provided to be paid to plaintiff for his services as contractor in building and constructing said building and appurtenances, and it was further provided that such compensation to be so paid to said plaintiff by said defendants as contractor should not, in any event, exceed the sum of Thirty-two Hundred ($3200.00) Dollars, and his compensation for services as such architect should not exceed the additional sum of Sixteen Hundred ($1600.00) Dollars.''

The complaint alleges that, upon the making of said contract by the plaintiff and the defendants, the former forthwith entered upon the performance of the terms thereof, ''and between the 11th day of December, 1923, and the 23d day of February, 1924, drew and prepared plans and specifications for the building and appurtenances described in said contract.'' It is alleged that, at all times from the date of the making of said contract, the plaintiff has been ''and now is'' ready, willing, and able to fully and punctually perform all the covenants on his part to be performed, as set forth in said contract, but that he has been prevented from so doing by the ''defendants' failure, neglect and refusal to perform said contract on their part; and their refusal to allow plaintiff to further perform the same on his part''; that defendants were notified in writing of their refusal to proceed with the performance of the contract on the twenty-fifth day of March, 1925; that the acts of the defendants in refusing to perform their obligations under said contract and in thereby preventing plaintiff from carrying out his part of the

convention, were without cause or excuse, "in violation of the terms of said contract, and against the will and without the consent of plaintiff." The aggregate damages claimed are segregated and listed in the complaint as follows:

"In the sum of Three Thousand Two Hundred ($3,200.00) Dollars, being Ten (10%) per cent. of the estimated cost of construction of said Thirty-two-room apartment house described in said contract, the amount of the compensation provided therein for the services of plaintiff as contractor, and in the further sum of One Thousand Six Hundred ($1600.00) Dollars, being Five (5%) per cent. of the estimated cost of construction of said Thirty-two-room apartment house described in said contract as compensation for plaintiff's services as architect, and

"In the further sum of Twenty ($20.00) Dollars expended and laid out by plaintiff in causing the real estate described in said contract to be surveyed."

The contract in its entirety is by the complaint expressly made a part thereof.

At this point, it may parenthetically be stated that the testimony of both the plaintiff and the defendant, Mrs. Stevens, was that, notwithstanding that the contract bears date of December 11, 1923, it was not in point of fact signed by the former and the latter until some time in the month of January, 1924, the plaintiff testifying that he and Mrs. Stevens signed the instrument at some time between the 15th and 20th of January, 1924, and Mrs. Stevens testifying that she and plaintiff subscribed their names thereto on the twenty-fourth day of January, 1924.

The answer denies specifically each of the averments of the complaint, and then alleges:

"That plaintiff represented to the defendant that he, the plaintiff, could and would, upon the execution of the contract involved in this act, if signed and delivered by the defendants, secure for the defendants an advance rental from tenants in the sum of $4,000; that thereupon these defendants were to advance the sum of $2,000 and the plaintiff was then to secure a loan upon said property in a sufficient amount to complete said building, said loan to bear not to exceed seven per cent interest; that plaintiff

has failed, neglected and refused to do any of the things above mentioned, but did specifically agree with the defendants on January 14, 1924, and subsequent to the date of the contract upon which this suit is brought, as follows:

" 'January 14, 1924.

" 'Maye D. Stevens,
" '1111½ W. 17th St.,
" 'Los Angeles, Calif.
" 'Dear Madam:

" 'In regards to your proposed apartment building to be built on Lot 4 Block 9, Los Angeles Homestead Tract, will state that if we are unable to secure you a loan there will be no charge made for plans and specifications.

" 'We further agree to find a party to lease said building at Seventeen ($17.00) Dollars a room.

" 'Yours truly,
" 'R. V. JONES, Jr.' "

Proceeding, the answer charges that the plaintiff "has totally failed and refused to secure a tenant for said building who would either pay the sum of $17.00 per room or the sum of $4,000 in cash; that he has failed to secure a loan on said building or to place a loan with the funds available to these defendants, or to do any of the things in said contract, except to present plans and specifications upon which these defendants refused to proceed," etc.

As a special defense, the defendants by their answer re-allege the promise of plaintiff that, to promote and facilitate the construction of the proposed apartment house, he would secure an advance cash rental for the rooms or apartments in the proposed apartment house and that he (plaintiff), upon an advance of $2,000 by the defendants, would secure a sufficient loan on the building to complete its construction, and the refusal and failure of the plaintiff to carry out said promise. The answer then proceeds: "That at the time of the execution of said contract, it was delivered by them, after its signature, to the agent of the plaintiff to wit, one —— Gregg, with the distinct understanding and agreement that the said Gregg would hold the contract, as the agent of these defendants, until such time as the said R. V. Jones should well and truly execute and deliver to the defendants a written agreement under the terms of which it should be specifically agreed

on his part to do the things herein mentioned, to wit, to secure the loan, to secure the tenants, and to do the other things herein mentioned; that the said Gregg, without the consent or knowledge or these defendants, and in violation of the instructions given to him, and in collusion with the plaintiff, delivered said contract and secured back only the statement under date of January 14, 1924, to which reference is herein made, and these defendants allege that the plaintiff has not performed even the agreements and covenants mentioned in said statement of January 14, 1924. Defendants further allege that the said contract should not have been delivered and was never intended to be delivered to the plaintiff until such time as he should have arranged to do the things agreed by him that he would do, and that for this reason there was no consideration for the execution of said contract, even though the same had been delivered,'' etc.

The court, among other things, found (finding 6) that the plaintiff represented to the defendants that if they would sign and deliver to him the contract pleaded, he could and would, upon such signing, secure for the defendants the sum of $4,000 for the purpose above explained, that he could and would secure for defendants, upon an advance to him by the latter of the sum of $2,000, a loan sufficient to complete the construction of the building, that thereupon defendants did advance said sum of $2,000, but that plaintiff ''failed, neglected and refused'' to do those things; that the defendant, Maye D. Stevens, under the circumstances and upon the condition and with the instructions and understanding as alleged in the answer, and which are hereinbefore set forth, gave the contract to one Gregg, under specific instructions and with the distinct understanding that the instrument was not to be delivered into the manual possession of the plaintiff until the latter should have complied with the conditions as explained above, but that said Gregg, in violation of said instructions, ''and in collusion with the plaintiff,'' delivered said contract to the latter, ''and secured back only the statement under date of January 14th, 1924'' (being the writing hereinabove reproduced from the answer); ''that it is true that plaintiff has not performed even the agreements and covenants mentioned in said state-

ment of January 14, 1924; that it is true that said contract should not have been delivered and was not intended to be delivered to the plaintiff until such time as he should have arranged to do the things agreed by him that he would do, and that for this reason there was no consideration for the execution of said contract or the delivery thereof by these defendants. The court further finds (finding 9) that the plaintiff did not, in order to promote the construction of said apartment house, secure for the use or benefit of defendants the sum of $4,000 advance rental; that he did not secure a loan on said building to bear interest at the rate of not in excess of 7% per annum.''

Both findings 6 and 9 derive ample support from the evidence. The testimony of the defendant, Mrs. Maye Stevens, was that her husband was in Arizona when he signed the contract, she having by mail sent the instrument to him before she or the plaintiff signed it. This testimony of Mrs. Stevens was corroborated by that of her husband. Her testimony further verified the allegations of the answer relative to the placing by her of the contract, after it was signed by her and her husband, in the hands of O. M. Gregg (referred to in the above finding as ''one Gregg''), with specific instructions to Gregg that he was not to deliver the instrument to the plaintiff until the latter had executed and delivered to her and her husband a written promise or agreement that he would secure the rentals mentioned and a loan of sufficient money upon the property to complete the construction of the building and also the allegation as to the delivery by Gregg to plaintiff, contrary to said instructions, of said contract, or in making such delivery without first having obtained from plaintiff for the defendants such agreement. This testimony supports the finding as to the matter of the delivery of the contract against the instructions of Mrs. Stevens, although, it is to be said, there was other testimony apparently tending to contradict or at least discredit the testimony of Mrs. Stevens regarding that transaction. It was, of course, for the trial court to determine the evidentiary conflict, and its decision in favor of the defendants upon the question of the delivery of the contract is conclusive upon appeal. The defendants contend that the delivery of the

contract by Gregg to the plaintiff under the indicated circumstances was neither in law nor in point of fact a delivery, and that, therefore, the minds of the parties never met on the terms and the covenants of the agreement; that hence no contract for the construction of the building was ever entered into between them. ■ The undisputed testimony discloses that Gregg was an agent of the plaintiff for the very purpose of procuring building contracts. The scope of his authority as plaintiff's agent was circumscribed to the securing of contracts for his principal from persons desiring or intending to or contemplating the erection of buildings upon their real property or to conduct preliminary negotiations which would lead to the bringing of such parties and the plaintiff together with the view of securing such contracts. He was, in other words, a special agent whose authority as such was restricted to the performance of a particular kind of duty. The rule now seems to be settled that, while a delivery of a contract in escrow may be made to the general agent of the party to whom a conditional delivery is intended to be made, such delivery cannot be so made if the agency is, as here, for the purpose of procuring the contract. (10 R. C. L. 631; 10 Cal. Jur. 586; Civ. Code, secs. 1056, 1057, and 1627.) There are, of course, conceivable circumstances under which the deposit of a contract in escrow with such special agent, to be delivered to his principal upon the happening of a specified condition, could and properly would be sustained, as, for illustration, where the possession of the contract by the agent as such "escrowee" is obtained by the fraud either of the agent or the principal or by both acting in unison to accomplish the fraudulent purpose. But it is not necessary further to consider this branch of the controversy between the parties, since upon another consideration the judgment must be upheld.

■ As has been stated, the answer alleges (and the court finds) that, for the purpose of promoting the construction of the building, the plaintiff agreed that he would secure for the defendants the sum of $4,000 advance rental and also a loan on the property in a sum sufficient to complete the construction of the apartment house; that plaintiff failed and refused to procure such rental and such loan. In support of these allegations the defendant intro-

duced in evidence the letter or document set forth herein-above as a part of the answer of the defendants, which is dated January 14, 1924, and signed by the plaintiff. From that document it is clear that the plaintiff agreed to procure the sum of $4,000 as advance rental for apartments in the building and, further, it is clearly to be implied therefrom that he also agreed to procure a loan on the property of a sufficient sum of money to complete the construction of the building. There was also introduced in evidence a letter, addressed to plaintiff by Mrs. Stevens, and signed by her, and dated at Somerton, Arizona, January 24, 1924, which is in the following language: "Will accept your offer for lease on proposed Apt. House. Will lease for 5 years or more at $17.00 per room with $4,000.00 in advance to be applied to construction building." That letter, together with the one to the defendants from plaintiff dated January 14, 1924 (hereinabove set forth), and the contract, dated December 11, 1923, but executed January 24, 1924, must be construed as one document, or the two letters mentioned read as a part of the contract of date December 11, 1924. As so read, and as is made clear from the parol testimony properly received for the purpose of explaining and establishing their connection with each other, there is left no reasonable ground for doubting that the finding that the plaintiff did promise to secure the advance rental and the loan referred to as the necessary means for promoting the financing of the work of constructing the apartment house rests upon a sound evidentiary foundation. This testimony came not alone from Mrs. Stevens but also from the plaintiff himself. We need not repeat herein the testimony of Mrs. Stevens as to that phase of the transaction and only so much of the testimony of the plaintiff as will unquestionably show that he did make such an agreement and that it was a part of the contract for the erection of the building. He testified that "when we first started talking to her (Mrs. Stevens) I told her we could procure a loan for the amount she required, and also lease the apartment house. . . . I told her that we would secure whatever money that she needed for financing the apartment house. . . . I told her I would take a first mortgage for $25,000.00 and a second mortgage for $7,000.00." Proceeding, the plaintiff said that he had

arranged to secure the money from R. V. Jones & Co., a corporation, of which he was secretary, and in which his father practically owned all the capital stock. But it is made by the testimony perfectly plain that the plaintiff had never made any such arrangements for securing the loan from the corporation or his father as would or did place him in the position of one *ready and able* to procure the loan, even if he was willing to do so. Mrs. Stevens testified that, having been assured by the plaintiff that he had made definite arrangements for securing the loan from the Jones corporation, she insisted that the money so acquired should be placed in escrow—that is, placed in the hands of some disinterested third party—so that it would be readily available as payments on the work of construction from time to time fell due, but that the plaintiff replied that his father would not stand for such an arrangement, or words to that effect. But it is perfectly clear from the evidence that the plaintiff at no time was able to provide the loan which he agreed to procure to finance the construction of the building. In fact, his own testimony, as well as the records of the corporation from which he represented to the defendants he could secure such loan, shows that he had obtained no agreement or promise from the corporation or from his father for the loan of the money which could be enforced in law. It was admitted by the plaintiff through his counsel that there was nothing in the minutes of the corporation or any of the records of its transactions showing that any such loan had been asked from or considered by the corporation. It is true that the plaintiff testified that he applied to the corporation for the loan and that, after he and his father (in December, 1923) went to and inspected the premises, the latter said to him (plaintiff) that he (the father) would make the loan and directed the plaintiff to prepare the necessary documents to effect the transaction, but the loan was not made, nor were any proper documents prepared, so far as the record shows, looking to the consummation of the loan, or any showing that there was any intention on the part of the corporation of making it. It also appears that, in June, 1925, the corporation addressed a letter to the plaintiff, stating that it would make the loan; but that letter and the proposition it contained were prepared, sent to,

and received by the defendants a trifle over a year after the present action was commenced, and they were, therefore, wholly without any legal force. Thus it is plain that the plaintiff was not at any time in the course of the negotiations involving the construction of the proposed building able and ready to furnish or procure a loan of a sufficient sum of money necessary to the financing of the construction of the building or any loan for that purpose at all. This loan, as is obvious, constituted the dominant feature or element of the consideration upon which the defendants were induced to sign the contract for the erection of the proposed apartment house. Nor did the plaintiff at any time procure the $4,000 advance rental which he promised to secure. In this connection, it should be stated that there was received in evidence, at the behest of the plaintiff, a letter dated March 12, 1924, and signed by him and addressed to the defendants, in which he "guaranteed" to secure a tenant "for you before your building is complete, but in case we are not able to secure a lease, we will at once lease it upon completion and furnish it ourselves, for ten (10) years and Four Thousand Dollars ($4,000.00) advance rent." Mrs. Stevens testified that neither she nor her husband ever received or saw such a letter. The trial court, as is necessarily to be implied from its findings, accepted Mrs. Stevens' testimony as verity regarding that matter, and so this court must accept it.

The findings (particularly findings 6 and 9), as has been above pointed out, being of facts alleged in the answer, and, as likewise shown, being strongly bolstered by the evidence, disclose a complete defense to plaintiff's action. (*Merzoian* v. *Kludjian*, 183 Cal. 422, 428 [191 Pac. 673]; *Pellaton* v. *Brunski*, 69 Cal. App. 301, 304 [231 Pac. 583]; *Tashjian* v. *Krikorian*, 55 Cal. App. 160, 164 [202 Pac. 956]; *McCarthy* v. *Grider*, 72 Cal. App. 393, 402 et seq. [237 Pac. 751].) In the last-named case (an action for the rescission of a contract) an offer in writing was made by the vendee to the vendor under said contract, which was for the purchase and sale of lands, to pay the balance of the purchase price, provided the vendor could and would tender and give to the vendee a merchantable title to the property. It was shown that the vendee did not himself have the money necessary to make good

the offer, but the vendee or offerer testified that he had sought a loan of sufficient money from a bank to cover the amount to be paid, and that the bank agreed to let him have the loan if he furnished personal security in the person of a certain other party, who had promised the vendee that he would become a surety on the note for the loan. The evidence showed that the proposed surety was under no legal obligation to indorse or become a surety on the note—that the promise of the proposed surety to become such was a mere naked promise or without consideration. Under this state of facts it was held, of course, that the offer was not a valid one because the vendee or offerer was not ready and able to make the offer good. The court said:

"In actions by brokers to recover commissions for procuring a purchaser of property, it is requisite, to support such actions, that it be shown that such proposed purchaser is ready, able, and willing to make the purchase, and where it appears in any such action that the purported ability of the purchaser to make the purchase is wholly dependent upon the verbal promises of a third party, without consideration, to assist him in securing the money necessary to make the purchase, then the latter is not shown to be able to make such purchase, and the broker is hence not entitled to recover. He has not shown that he produced a purchaser either able or ready to purchase. (*Merzoian* v. *Kludjian*, 183 Cal. 422 [191 Pac. 673], per Lawlor, J.; 4 Cal. Jur. 591; note, 1 A. L. R. 528.) The principle thus stated is, of course, applicable to any case where, as here, an offer to perform an act carries with it the necessity for the payment of money to make good the offer of performance as a condition to the performance of a concurrent condition by him to whom the offer is made."

The other cases above cited hold to the same principle.

For the reasons hereinabove given, the judgment appealed from is affirmed.

Plummer, J., and Finch, P. J., concurred.